## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JUDY JONES                                                CIVIL ACTION

VERSUS                                                    16-221-SDD-EWD

THE HOSPITAL SERVICE DISTRICT OF
WEST FELICIANA PARISH, LOUISIANA
AND THE BOARD OF COMMISSIONERS
OF THE HOSPITAL SERVICE DISTRICT
OF WEST FELICIANA

## RULING

This matter is before the Court on the *Motion to Dismiss for Failure to State a Claim*[1] filed by Defendants, The Hospital Service District of West Feliciana Parish, Louisiana and the Board of Commissioners of the Hospital Service District of West Feliciana ("Defendants").  Plaintiff, Judy Jones ("Plaintiff"), filed an *Opposition*[2] to which Defendants filed a *Reply*,[3] and Plaintiff filed a *Sur-Reply*.[4]  For the following reasons, the motion will be granted in part and denied in part.

## I.    FACTUAL BACKGROUND[5]

Plaintiff, an African-American, was hired in December 1998 as a staff nurse by the West Feliciana Parish Hospital ("Hospital").  During her employment with the Hospital, Plaintiff obtained her education as a Registered Nurse and obtained her Masters of Science in Nursing with a specialization in Healthcare Management and a certification in Diabetes.

---

[1] Rec. Doc. 10.
[2] Rec. Doc. 17.
[3] Rec. Doc. 18.
[4] Rec. Doc. 21.
[5] The Court bases the factual background on Rec. Doc. 1.
37832

Plaintiff was assigned the duties of Performance Improvement Director in 2009. Plaintiff alleges, in 2010, she attained accreditation for a Diabetes Self-Management Education Program and was then given the additional duties of Diabetes Program Director and Diabetes Educator.  Plaintiff alleges she was assigned the additional duties of Interim Housekeeping Supervisor on December 9, 2013 which she held until December of 2014.  Plaintiff was named the Interim Director of Nursing on March 14, 2014, a position she held until December of 2014. Plaintiff claims that CEO Lee Chastant ("Chastant") "made it clear to [Plaintiff] that he was only making her "interim" [Director of Nursing] until he could find someone else (white)."[6] Plaintiff alleges that she was qualified for the position of permanent Director of Nursing and, despite her repeated requests, she was denied this position.   Plaintiff claims she was offered the position of permanent Housekeeping Supervisor.

Following her appointment as interim Director of Nursing, Plaintiff inquired why a Hospital-wide email was not sent informing the Hospital of her new position.  Chastant allegedly responded that a Hospital-wide email was not necessary as she would "only be interim for a short time."[7]  Plaintiff further claims that, unlike her predecessor, she was told it was not necessary to attend Board meetings. In her capacity as interim Director of Nursing, Plaintiff alleges that, contrary to her job description, she was not allowed to hire staff; rather, all hiring was done by Chastant and Emergency Room Director, Dr. Anthony Shields ("Dr. Shields").   Plaintiff claims that she was allowed to make hiring decisions regarding only the Housekeeping department.  Plaintiff also alleges that, while she was

---

[6] *Id.* at p. 5.
[7] *Id.*
37832

interim Director of Nursing, it was unclear who her immediate supervisor was until three months after she was hired.

Plaintiff alleges that, at all times while employed at the Hospital, she was paid less than Caucasian employees of the Hospital although she allegedly had more qualifications and experience than her Caucasian counterparts.   Plaintiff also claims that she was subjected to racial harassment consisting of, but not limited to: derogatory statements regarding African-Americans; comments that African-Americans "need to know their place;" placing Plaintiff as the head of housekeeping "because she can relate"[8] as all the employees in housekeeping are African-American; and Caucasian nurses refusing to treat African-American patients.   Plaintiff further claims that, during her employment with the Hospital, there was no effective policy regarding harassment, discrimination, and retaliation.

Following her appointment as Housekeeping Supervisor, Plaintiff asked Chastant why she had not been appointed to the other positions for which she was allegedly qualified.   Plaintiff claims Chastant stated that "the decision ha[d] been made" and that the Plaintiff could better relate to the housekeeping department.[9]   Chastant assigned one of the open positions to a Caucasian female who had a respiratory therapy background. Plaintiff contends another open position was filled by a less-qualified Caucasian nurse. Plaintiff protested the denial of her appointment to the position, arguing the decision was racially motivated.

---

[8] *Id.* at pp. 2-3.
[9] *Id.* at p. 4.
37832

Plaintiff formally applied for the permanent Director of Nursing position on April 11, 2014.  Plaintiff alleges that Chastant again told her that he only wanted her on an interim basis.  Plaintiff claims that she protested that current and prior denials were racially motivated.  On June 18, 2014, Plaintiff was informed that Dr. Shields, the new Medical Director for the Hospital, was her supervisor.  Plaintiff claims that both preceding and succeeding Nursing Directors reported to Chastant, not the Medical Director.  Plaintiff alleges that the Hospital refused to fill the position of permanent Director of Nursing "until a white applicant applied"[10] in violation of Hospital policy 500.150.  Plaintiff also claims that Defendants incorrectly told African-American employees that Plaintiff had not applied for the position of permanent Director of Nursing.

On April 8, 2014, the nursing department had a meeting wherein Chastant stated that five positions would be posted for all interested employees per Hospital policy.  Plaintiff claims that she spoke with Chastant on May 20, 2014 about available positions.  Plaintiff alleges that Chastant threatened her, stating:

> Everybody has a place, a place where they are better valued. You need to control the nurses and stop them from asking questions.  If you don't know your place, there can never be a position in management for you.  I don't have to post anything, because they are duties, not positions.  I will let the nursing staff know, what will or will not be posted.[11]

During the meeting, Plaintiff reportedly asked Chastant why a Caucasian employee had been appointed to the position of Chief Compliance Officer when she did not meet the qualifications for the position.  Plaintiff claims that Chastant responded, "I could see how

---

[10] *Id.* at p. 6.
[11] *Id.* at p. 7.
37832

you could think like that but the best person will get the job."[12]  Plaintiff allegedly stated that she could receive more training if Chastant believed it was necessary for the permanent Director of Nursing role.  In response, Plaintiff claims that Chastant ended the meeting by walking out.  On his way out, Plaintiff alleges she told Chastant that she would not "lie to staff about the status of the vacant positions."[13]

Plaintiff emailed all nursing staff a brief update on available positions on May 27, 2014, after several nurses asked Chastant about the open positions, to which he did not respond.  In the email, Plaintiff claims she told the nurses that some of the duties would be posted and others would not, per her conversation with Chastant.

On June 5, 2014, Plaintiff alleges that she filed a written complaint of discrimination with Defendants which included the denial of promotions due to her race and complaints on behalf of her co-workers for denial of promotions and race-based pay disparities. Plaintiff claims that, on July 27, 2014, Defendants responded to the complaint by denying the accusations.  Plaintiff then met with Chastant on August 6, 2014 in an attempt to address the race discrimination claims of herself and her co-workers. Plaintiff alleges that Chastant did nothing to resolve Plaintiff's discrimination complaints.

Plaintiff met with Board Member Cheryl Franklin ("Franklin") on August 12, 2014. Plaintiff alleges that, during this meeting, Franklin told Plaintiff that she and others had been denied promotions based upon their race.  Plaintiff claims that Franklin urged her to file a written complaint with the Board and "to make sure that press was there for the Board meeting."[14]

---

[12] *Id.*
[13] *Id.*
[14] *Id.* at p. 8.
37832

Plaintiff and other African-American nurses presented their complaints of racism to the Board on August 21, 2014.  At this meeting, Plaintiff, along with other African-American nurses, provided each member of the Board with emails and correspondence regarding their complaints of racism, "to no avail."[15]  Plaintiff alleges that, on September 17, 2014, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights ("LCHR").

Plaintiff claims that, on October 8, 2014, she was contacted by Defendants and advised that she needed to take a survey/test before she could be interviewed.  Plaintiff also claims that Defendants simultaneously scheduled an interview with her for October 20, 2014.  According to Plaintiff, this interview was a "sham"[16] because Chastant informed her during the interview that she was ineligible to sit for the interview as she did not "conduct"[17] the survey/test.  In response, Plaintiff alleges she told Chastant that she had not received the link for the survey/test, to which Chastant responded: "it was sent to you."[18]  Plaintiff further claims that the link was not sent to her until after the interview was finished on October 20, 2015.

Plaintiff alleges that she took sick leave shortly after October 20, 2014 until November 3, 2014 due to her working environment.  Plaintiff claims that, during her sick leave, Defendants harassed her, requested that she return to work, and threatened her.  According to Plaintiff, this harassment was a result of her protected activity of taking sick leave.

---

[15] *Id.*
[16] *Id.*
[17] *Id.* at pp. 8-9.
[18] *Id.* at p. 9.
37832

Subsequently, Plaintiff contends that she and other African-American co-workers were "wrongfully accused of committing HIPPA violations, subjected to licensure complaints with their licensing boards, and falsely accused of misconduct by Defendants and in retaliation/reprisal for Petitioner's protected activities."[19]   During a two month period, five nurses were suspended, and nine or ten nurses either resigned or were allegedly fired by the Hospital.  The Hospital hired agency nurses, and Plaintiff alleges that the agency nurses worked with "little or no orientation to the facility," no access to computer charting, and no access to Omnicell for medication administration, leaving patients without vital medication – all violations of law.[20]  Plaintiff also alleges that labor laws were violated as nurses were allowed to work for 24 hours.

Chastant allegedly called Plaintiff to his office on December 9, 2014 for a meeting wherein he informed her that she was no longer the interim Director of Nursing and was being replaced by Melissa Stewart ("Stewart").  Plaintiff claims that Chastant demanded that she train Stewart.  Plaintiff protested the hiring as discriminatory because Stewart is Caucasian.  Plaintiff also protested the hiring because she was allegedly more qualified than Stewart.  Plaintiff filed a written complaint with Dr. Shields on December 12, 2014, alleging that Stewart's hiring was discriminatory.

 Plaintiff claims that, on December 19, 2014, Defendants ordered her to answer the complaints of discrimination of her African-American co-workers.  Plaintiff contends she asked for documentation regarding how promotions were granted at the Hospital. Plaintiff claims this information was vital because she was unaware of how hiring

---

[19] *Id.* at p. 9.
[20] *Id.* at p. 10.
37832

decisions were made, and she was not allowed to attend any promotion meetings. According to Plaintiff, Defendants refused to provide this information, and instead alleged that Plaintiff was asking for help in responding to her co-workers complaints. Plaintiff alleges that Chastant's email encouraged her to use the words "due process" in the email[21]- a violation of the Hospital's grievance policy.

Plaintiff claims that, following the rejection of her complaint on December 22, 2014, Dr. Shields began harassing her by: giving her office to a Caucasian and reassigning her office to a janitor closet; micromanaging her work; entering her office and turning the lights on and off; picking up items from her desk and "examining" them without permission; requiring her to work in positions and shifts that were undesirable; sending her home without reason and cutting her pay; forcing her to use paid time off; cutting off access to her office; and changing her schedule.[22] Plaintiff alleges that, per the above acts of alleged harassment, she had to take medical/sick leave.

Plaintiff filed a complaint regarding Stewart's appointment to the Director of Nursing position with Chastant on December 30, 2014; however, Chastant allegedly failed to respond to this complaint. On December 31, 2014, Plaintiff filed an additional complaint of racial discrimination, retaliation, and reprisal. Plaintiff claims Dr. Shields falsely accused her of resenting Stewart's appointment to the position of Director of Nursing; she further alleges that Chastant never responded to the complaint. During Plaintiff's sick leave, pursuant to the Family Medical Leave Act ("FMLA"),[23] she claims she was

---

[21] *Id.*
[22] *Id.* at p. 11.
[23] 29 U.S.C. § 2601 *et seq.*
37832

demoted, and her pay was reduced by $7 an hour, her job duties were removed, and she had to use paid time off to receive her pay check.

Plaintiff further claims she filed another complaint on January 21, 2015, and Chastant again failed to respond.  Plaintiff alleges Chastant made false allegations accusing her of workplace misconduct, and Plaintiff's working conditions did not improve. Plaintiff claims that she was constructively discharged on February 2, 2015.  Plaintiff alleges that, three months after Stewart was hired, she was asked to resign because she did not have the necessary qualifications for the Director of Nursing position.  Plaintiff claims that Stewart's replacement was also less qualified than her.

Plaintiff filed this *Complaint*[24] on April 8, 2016 alleging that Defendants violated Title VII of the Civil Rights Act of 1964[25] and Louisiana Revised Statute 23:301, *et seq.* On May 26, 2016, Plaintiff filed an *Amended Complaint*[26] to include her Notice of Right to Sue Letter from the Department of Justice.  Defendants have filed a *Motion to Dismiss* Plaintiff's claims.

## II.    LAW AND ANALYSIS

### A.  Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[27]   The Court may consider "the complaint, its proper attachments, documents incorporated into

---

[24] Rec. Doc. 1.
[25] 42 U.S.C. § 2000(e).
[26] Rec. Doc. 7.
[27] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
37832

the complaint by reference, and matters of which a court may take judicial notice."[28]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[29]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[30]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[31]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[33]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[34]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[35]

---

[28] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

[29] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d at 467).

[30] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).

[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted) (hereinafter *Iqbal*).

[32] *Twombly*, 550 U.S. at 570.

[33] *Iqbal*, 556 U.S. at 678.

[34] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[35] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

37832

## B.  Motion to Dismiss Under Rule 12(b)(1)

"A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)."[36]  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim relief that is plausible on its face.'"[37] However, when ruling on a Rule 12(b)(1) motion, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."[38]  Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim which would entitle plaintiff to relief."[39]

## C.  Prescription

Defendants argue that the alleged discrimination Plaintiff asserts in her EEOC Charge occurred outside of the 300-day statutory period.[40] "When an employee discrimination claim is brought in a deferral state, an aggrieved employee must file a claim with the designated state agency of the EEOC within 300 days of the alleged unlawful employment action."[41] Plaintiff's EEOC "Charge of Discrimination" states that the earliest

---

[36] *Hall v. Louisiana, et. al.*., 974 F.Supp.2d 978, 985 (M.D. La. Sep. 30, 2013)(citing *Benton v. U.S.*., 960 F.2d 19, 21 (5th Cir. 1998)).

[37] *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[38] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

[39] *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

[40] Rec. Doc. 10-1, pp. 4-5.

[41] *Kirkland v. Big Lots Store, Inc.*, 547 Fed.Appx. 570, 572-73 (5th Cir. 2013).(*See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).

37832

date of discrimination was December 9, 2013, and her last date of discrimination was January 23, 2014.[42]  If the claim is filed within the 300 days, it is not prescribed.[43]

The Fifth Circuit in *Conner v. Louisiana Department of Health and Hospitals* held:

> This court has recognized that an intake questionnaire that informs the EEOC of the identity of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent is sufficient to set [ ] the administrative machinery in motion.[44]

It is undisputed that Plaintiff submitted an intake questionnaire to the EEOC.[45]  The issue before the Court is the date Plaintiff submitted her EEOC intake questionnaire.  Plaintiff argues that the intake questionnaire was submitted on September 17, 2014.[46]

The Fifth Circuit in *Kirkland v. Big Lots Store Inc.* examined the question before the Court – what is the date that an EEOC intake questionnaire is deemed submitted for purposes of calculating the 300 day prescriptive period in Louisiana.[47]  The plaintiff in *Kirkland*, like the Plaintiff in the present case,[48] argued that the EEOC intake questionnaire is submitted on the day it was mailed.  In Ruling, the court stated:

> Mailing is not filing for purposes of Title VII.  A claim is considered filed when it is *received* by the EEOC or the state agency responsible for the administration of complaints of employment discrimination.  Accordingly, Kirkland's claim was not filed until it was received by the LCHR [Louisiana Commission on Human Rights] on May 6, 2010.[49]

---

[42] Rec. Doc. 17-1, p. 22.
[43] *See Kirkland*, 547 Fed.Appx. at 572-73.
[44] 247 Fed. Appx. 480, 481 (5th Cir. 2007)(quoting *Price v. Southwestern Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982); *see also Edelman v. Lynchburg College*, 535 U.S. 106, 118-119, 122 S.Ct. 1145, 152 L.Ed. 188 (2002)(internal citations omitted).
[45] *See* Rec. Docs. 1, 18.
[46] Rec. Doc. 17, p. 5.
[47] 547 Fed.Appx. at  572-73.
[48] Rec. Doc. 17, p. 5.
[49] *Kirkland*, 547 Fed.Appx. at 573.(quoting *Taylor v. Gen. Tel. Co. of Sw.*, 759 F.2d 437, 440 (5th Cir. 1985)(citing 29 C.F.R. § 1601.13(a)(4)(2)(a)(A)(2010)).(emphasis original).
37832

Based upon the holding of the Fifth Circuit in *Kirkland*, Plaintiff's EEOC intake questionnaire will be deemed submitted on the date it was received by the LCHR.[50]

Examining the EEOC documents submitted, it is clear that the EEOC provided a letter dated October 8, 2014, wherein the EEOC "acknowledge[d] receipt of the above-numbered charge of employment discrimination."[51]  As this is the date that the EEOC is acknowledging receipt of Plaintiff's EEOC complaint, the Court finds that the EEOC received the Plaintiff's intake questionnaire on October 8, 2014.  Therefore, as long as the Plaintiff's alleged discriminatory conduct occurred on or after December 12, 2013, her claim is not time barred.  Per her EEOC Charge, Plaintiff's last date of discrimination occurred on January 23, 2014.[52]  Accordingly, Plaintiff's Title VII discrimination claim is not time barred as she filed her EEOC complaint within 300 days of the last date of discriminatory conduct as required in Louisiana.[53]

For the above reasons, Defendants' *Motion to Dismiss* Plaintiff's Title VII discrimination claim as time barred is DENIED.

---

[50] The Court rejects Plaintiff's argument that the submission date is September 17, 2014 based upon the Supreme Court's decision in *Edelman v. Lynchburg College.* 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002). *See* Rec. Doc. 17, pp. 4-5.  Applying *Edelman* to the present case, it is clear that the submission date relates back to when the Plaintiff's EEOC intake questionnaire was "filed" with the EEOC.  However, the Fifth Circuit in *Kirkland* clearly stated that an EEOC intake questionnaire is deemed "filed" in Louisiana when it is received by the LCHR.  Accordingly, the Court deems Plaintiff's intake questionnaire "filed" on the date it was received by LCHR.
[51] Rec. Doc. 17-1, p. 17.
[52] *See* Rec. Doc. 17-1, p. 22.
[53] The Court need not examine Plaintiff's continuing violation or Lilly Ledbetter arguments as her discrimination claim is not time barred.
37832

### D.  Scope of Plaintiff's EEOC Charge

Defendants argue that Plaintiff's constructive discharge and demotion claims should be dismissed as they were not properly alleged in her EEOC Charge.[54]  Plaintiff responds that her constructive discharge and demotion claims grew out of her retaliation claim.[55]

The question before the Court is whether Plaintiff has exhausted her administrative remedies on her constructive discharge and demotion claims.  While Plaintiff's *Complaint* contains allegations of retaliation, harassment, and discrimination for failure to promote,[56] the original EEOC Charge does not contain a claim for constructive discharge or demotion.[57]  The court in *Pacheco v. Mineta*, relying on *Fellows v. Universal Restaurants, Inc.* and *Fine v. GAF Chemical Corporation*, stated: "this court interprets what is properly embraced in review of a Title – VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[58]  Accordingly, the Court may "look slightly beyond [the charge's] four corners, to its substance rather than its label."[59]

The language contained in the "Particulars" portion of Plaintiff's original Charge clearly alleges retaliation.  Absent, however, in the "Particulars" portion is any alleged constructive discharge or demotion claims, as they had not occurred.  However, because

---

[54] Rec. Doc. 10-1, p. 11.
[55] Rec. Doc. 21, p. 2.
[56] Rec. Doc. 1.
[57] Rec. Doc. 17-1, p. 22.
[58] 448 F.3d at 789.
[59] *Id.*
37832

the facts supporting Plaintiff's claims for constructive discharge and demotion are retaliatory nature,[60] the Court finds that Plaintiff's constructive discharge  and demotion claims were likely "to grow out of the charge"[61] of retaliation. Accordingly, Defendants' *Motion to Dismiss* Plaintiff's constructive discharge and demotion claims pursuant to FRCP 12(b)(1) is DENIED.

### E.  Plaintiff's State Law Claims

Defendants argue that Plaintiff's Louisiana state law discrimination claim has prescribed, along with her claims for retaliation, harassment, constructive discharge, and demotion because they were not properly alleged.  Louisiana Revised Statute 23:303(C) states:

> A plaintiff who believes he or she has been discriminated against, and who intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action, shall detail the alleged discrimination, and both parties shall make a good faith effort to resolved the dispute prior to initiating court action.[62]

Federal district courts in Louisiana "have held [that] the filing of an EEOC charge of discrimination satisfies the notice requirement [La. R.S. 23:303(c)], but limits the state claim to the alleged discrimination detailed in the EEOC charge…"[63]  As previously discussed, Plaintiff's EEOC discrimination charge was timely filed and is not time barred. Defendants further argue that Plaintiff's state law claims for retaliation and constructive

---

[60] *See* Rec Docs. 1, 17-1, p. 22.
[61] *Pacheco*, 448 F.3d at 789.
[62] La. R.S. 23:303(C).
[63] *Johnson v. Hospital Corp. of America*, 767 F.Supp.2d 678, 700 (W.D. La. Feb. 11, 2011).(*See e.g., Johnson v. Harrah's Entertainment, Inc.*, 2005 WL 3541139, *4 (E.D. La. 2005); *Dorgan v. Foster*, 2006 WL 2067716, *5, (E.D. La. 2006), *citing Dunn v. Nextel So. Corp.*, 207 F.Supp.2d 523, 524 (M.D. La. 2002). 37832

discharge should be dismissed as they were not contained in the EEOC Charge which satisfies the notice requirement under La. R.S. 23:303(c).  Plaintiff's *Complaint* is limited solely to the acts described in her EEOC Charge and those which could reasonably be expected to grow from the EEOC investigation.   As discussed above, Plaintiff's constructive discharge and demotion claims grow from her retaliation claim contained in her original charge.  Given that Plaintiff's Louisiana law claims are based upon her EEOC Charge, the Court finds that Defendants were given notice of her retaliation, harassment, discrimination, constructive discharge, and demotion claims because these claims were contained in, or could reasonably be expected to grow out of, her EEOC complaint.

Accordingly, Defendants' *Motion to Dismiss* Plaintiff's state law discrimination, harassment, retaliation, constructive discharge, demotion, and failure to promote claims is DENIED.

### F.  Plaintiff's Claim Against the Board of Commissioners

Defendants argue Plaintiff's claims against the Board of Commissioners ("Board") should be dismissed because "nowhere in the *Complaint* does Plaintiff set forth any factual allegations that they engaged in any wrongful or unlawful conduct."[64]   The *Complaint* alleges the "[Board] had 'absolute control and authority over' the West Feliciana Parish Hospital."[65]  Viewing Plaintiff's allegations in the light most favorable to her, Plaintiff's allegations against the Hospital "can also be construed as allegations against the [Board]."[66]

---

[64] Rec. Doc. 10-1, p. 13.
[65] Rec. Doc. 1, p. 1.
[66] *Williams v. Hospital Service Dist. of West Feliciana Parish, La.*, 15-cv-00095, 2015 WL 4656910 at *5 (La. M.D. Aug. 5, 2015).
37832

Thus, the motion to dismiss is DENIED as to the Board.

## III. CONCLUSION

For the foregoing reasons, Defendant's *Motion to Dismiss for Failure to State a Claim*[67] is GRANTED in part and DENIED in part.  Because Defendant's *motion* does not argue for dismissal of Plaintiff's FMLA claims, these claims are not subject to dismissal and remain before the Court.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 22, 2017</u>.


_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[67] Rec. Doc. 10.

37832